Judge Owslev
delivered the opinion of the court.*
This suit was brought in equity by Cobb for the purpose of coercing payment of a judgment recovered by John Cobb, in the state of Virginia, against Thompson, and by John Cobb assigned to the complainant, Howel Cobb.
The judgment was obtained by John Cobb upon a contract entered into in 1782, and assigned by him to Howel Cobb in 1804, and the suit was commenced by Howel in September, 1811.
Upon a final hearing, the court below decreed that Thompson should pay the amount of the judgment recovered in Virginia, without interest; but both parties being dissatisfied, each appealed to this court.
Various objections are takeh to the relief sought by How-el Cobb; but the first which seems properly to demand the attention of this court, involves the propriety of his applying to a court of equity for relief.
It is contended, that as the judgment in favor of John (|obb created a legal right, he could have had no other than a legal remedy, at law, to enforce its payment; and although by his assignment, the beneficial interest passed to.Howe!
Cobb, it is urged, that the assignment, whilst it authorised the assignee to use the name of the assignor, it conferred upon him no right to any other remedy than such as might have been pursued by the assignor, John Cpbb.
Whether or,not the naked circumstance of John Cobb’s assignment, per se, gave to Howel Cobb a right of applying to equity to obtain satisfaction of the judgment, need not, in the present instance, be decided. 4 or be tqat as it may, we have no, doubt, but under the circumstances of this case, Howel Cobb properly applied to a court of equity for relief.
As by the assignment he gained an equity m the judg- *508 Blent only, becertainly could not have maintained an action at law in his own name; and although be'may have been authorised by the assignment to use the name of John Cobb, yet as John Cobb appears to have previously departed this life, no action could have been brought in bis namb; and if the assignment could have authorised the assignee to use the name of John Góbb’s legal representatives, as this suit was brought before the passage of the act of January, 1812, (session acts of 1811, H5,) it is plain that no action could then -have been commenced in the name of the person to whom administration of (he estate of John Cobb had been granted by the court in the state of Georgia.
There was, therefore, no person in whose name an action at law could have been maintained, and being no such person, it certainly cannot have been improper for HowefCobb to assert his equity, deduced through the assignment, in a court of chancery.
He might, it is true.; bv administering upon the estate of John Cobb in this country, have been authorised, in the character of administrator, to sue at law upon the judgment, but being entitled to the equitable interest, ho reason is perceived, why he should be subjected to the burthen and expense of an administration, merely to enable him to resort to a court of law instead-of a court of equity.
But if it be proper for a court of equity to take cognizance of the case, it is contended, that Howel Cobb has not shewn himself entitled to relief. For if is alledged, that Thompson was in fact owing John Cobb nothing when the judgment was obtained against him; and it is insisted, that upon the principles upon vyhich equity acts,-it will never aid in the enforcement of an unjust demand. "
That in a proceeding at law', the judgment in Virginia, as it was obtained after the service of process, would, under the constitution and laws of the United States, be conclusive between the parties, there is no doubt, but whether it should be so regarded by‘a court of equity when applied to for the purpose of enforcing its payment, we have not deemed it material to enquire; for if not conclusive, the judgment, most clearly, primafacie, imports a just demand; and as there is no evidence in the present case calculated to repel that presumption, John Cobh, in whose favor it was rendered, must be considered as having a perfect right to its amount.
But as that judgment appears to have been rendered *509 more than ten years before the commencement of this sCit in the court, below, it is also contended, that according to a statute of the Virginia legislature, limiting the time of bringing actions upon judgments, the suit of Howel Cobb ought not, by the courts of this country, to be sustained.
The law ot iiirithigS'the time when paymentoi a ghaUbecom-¡relied' cañ-not be relied den^defendant, who, after service of Pr°cess>. a,ni mem, has removed from tr> L
The statute alluded to having been enacted since the separation of this state from Virginia, certainly cannot he regarded as the law of this country; but if, as the judgment against Thompson was obtained in that state whilst the statute was in force there, it were proper to apply the statute in a proceeding upon the judgment here, still we should have ho doubt but. as Thompson is shewn to have removed from that state before the judgment, was obtained, he cannot, and ought not, to be protected by any thing contained in the statute.
Having thus shewn that the objections taken to the justice of the demand asserted bv Cobb, and the time of com-nrcncing his suit, are unavailing, we are led to examine the efficacy of a claim asserted by Thompson, and insisted on by him as a set off against the judgment obtained in Virginia. ' :
In May, 1180, John Cobb entered 1000 acres of land upon a treasury warrant, adjoining Edward Travis’s entry on the east side of a branch of the Ohio, four miles below the mouth of Licking above, and extending southward and eastward for quantity.
And thereafter, by. an endorsement upon the entry, subscribed with his name, made an assignment in the following words, &c.
“I assign the within entry of one thousand acres of land -“to Thomas Sewel, for value received, this-19th November, 1781, In case the full quantity shall not be to be “had at the very spot within mentioned, the quantity is to “be made up with land equal in quality, within four miles “of the place within mentioned, I oblige myself, my heirs, “executors and administrators and assigns, to comply with “the above, or pay the said Thomas Sewel ten thousand “pounds specie, &c.”
And in October, 1783, the said Sewel, by a further endorsement, made the following assignment: — “I assign the within to George Thompson, for value received.”
These assignments are contended by Thompson to have imposed an obligation upon John Cobb, to convey to him a good title to the one thousand acres of land contained ki *510 the entry, but by his answer, which he exhibits in the nature of a cross bill, he alledges, that instead of Cobb’s com* plying with his obligation, he had previously bound himself to convey to James Knox one half of the land for his services in locating the same; and by a subsequent contract with James Taylor, for other services to be performed by him, agreed to convey one moiety of theother half, to him;, and that Taylor having also become invested with Knox’s interest, brought suit in the Pendleton circuit court against the heirs of the said John Cobb, (he haying previously departed this life, insolvent,) and has actually obtained a decree and conveyance for three fourths«f the land include4 in the entry.
: A. debtor entitled to a set off, may assert that right against an assignee,]! it accrued before notice of tile assignment, even though the claim grows out of a distinct matter.
The assign, or of an em ry is not bound to survey a,nd patent the land; thatduty devolves on the assign-ee, who may procuré the pa'cnt in h-s own name.
The circumstances, thus detailed, Thompson contends, demonstrates an unquestionable right in him to compensation, ánd for so much as he ought to be compensated, insists, should be set off against the judgment obtained iq the state of Virginia.
In the consideration of the question of set off, it must bp recollected that, from the exhibits and evidence in the. cause, Howel Cobb is shewn to be a bona fide assignee for a valuable consideration of the demand upon Thompson. But although such an assignee, it will be conceded, that Thompson should not.be precluded, in the present contest, from availing himself of any equity which he may have had against John Cobb, before notice of the assignment to Howr el, and which might, in a proceeeding by John, have beeq successfully opposed to his right of recovery,
We are, however, unable to perceive any thing in this cause calculated to shew such an equity in the claim asserted by Thompson.
The endorsement on the entry to Sewel, so far from implying an undertaking on the part of Cobb to procure the patent and convey the land, most obviously must, by assigning the entry, have been intended to pass a vested right, in Sewel, and thereby enable him, in his own name, to make the survey and obtain the grant from the common* wealth.
It is true, by a clause in the assignment, Cobb is bound, in case the true quantity of acres could not be had according to the entry, to make up the quantity elsewhere; but tiia)t clause, upon no fair construction, can change the nature of the interest which passed to Sewel by the assignment — it, at most, imposed but an additional obligation up-' *511 on Cobb, to secure to Sewel the full quantity of acres called for in the entry. -
a decree t aken by pub* ab^enTdePt1 ⅛ ‘ not evi* dence of the lruth of statements oi the bill in a. ny collateral contest.
If, as is alledged by 1 hompson, Lobb, by a contract made before the assignment to Sewel, has, in consequence thereof, been prevented from obtaining the title thereto; as well from the nature and import of the general assignment to Sewel, as under the stipulation for the full quantity of acres contained in the entry, Cobb is, most clearly, accountable.
And that accountability, although it must have arisen out of a transaction totally distinct from that upon which the judgment in Virginia was obtained, yet as it must have accrued, if at all, before the assignment to Howel Cobb, and as John Cobb is shewn to have been then insolvent, if sufficiently established, it forms an equity which might not only be opposed to the judgment in a proceeding by John Cobb, but which should also be availing in a suit in chancery by his assignee.
The record, however, we are of opinion, furnishes no legitimate evidence of Cobb’s having contracted with Knox for any part of the land.
The only circumstance in the record conducing to shew1 such a contract is contained in the copy of the record of the Pendleton circuit court, in a suit brought by Taylor against the hei'rs of John Cobb, (of whom Howel Cobb is one,) for the purpose of obtaining a title to part of the (and.
By that transcript, Taylor appears to have obtained a decree and conveyance for three fourths of the land, and two fourths thereof he appears, by his bill, to have asserted claim to, through a contract alledged to have been made by John Cobb with Knox¿ '
But that decree, as it was obtained by taking the bill for confessed upon publication, without personal service of process, although competent evidence of a decree and conveyance in favor of Taylor, ought not, and cannot, in a collateral proceeding like the present, be received as evidence of a contract having been made between John Cobb , rr and Knox. . •
_ Thompson is certainly not bound by that decree, and the defendants there, as seven years have not yet elapsed since the decree was pronounced, may, by appearing and answering the bili of Taylor, throw him upon the proof of its allegations; and as Howel Cobb has not admitted, but ttiken issue in this case on the allegations upon which thaf *512 decree can alone be supported, be should not, in the present contest, be considered as occupying more unfavorable ground, than he would do in that case, after ail appearance and denial of the charges in the bill.
A patent Having1 issued on an assigned entry to the assignor, he holds the title in trust for the as-signee.
If, then, we are correct in supposing that the transcript Tn that case furnishes no evidence of the alledged contract with Knox, it follows, also, that Thompson has foiled to shew that the other fourth, for which Taylor obtained a decree, had been sold by John Cobb.
The letter'of Howe! Cobb, relied upon to prove the contract with Taylor, and which is exhibited in the record, is certainly not calculated to produce the result.
That letter appears to have been written in answer to a previous one received from Taylor, and contains an extract from a letter of John Cobb to Howell Cobb; but giving that extract its full weight, it cannot be construed to invest Taylor with any interest in the entry of 1000 acres. That entry, as we have already seen, had been previously sold and transferred by John Cobb to Sewel; and the letter was, obviously, intended only to make Taylor interested in such entries as Cobb was then the owner of.
Thompson, then, neither on account of the alledged contract xvith Knox, nor that with Taylor, has shewn any equity which would, even in a contest with John Cobb, have been applied to an extinguishment of the judgment.
Nor do we suppose that either under the assignment to Sewel or the decree subsequently pronounced in favor of Taylor, Thompson has manifested such an equity as will be availing against the assignee, Howel Cobb.
As the assignment passed a vested right, and authorised Sewel to make the survey and obtain the patent in his own name, it evidently cannot have imposed an obligation upon Cobb either to perfect the title or make a conveyance.
Notwithstanding, however, Cobb was not required to perfect the title, yet, if the title had, during his life, issued to him, as by the assignments Thompson became invested with (lie beneficial interest, he must have held the title in trust for the use of Thompson, and as such would have been bound to surrender it: but in that case, Cobb’s liability would have resulted not from the assignment, but from the circumstance of the legal title being cast upon him by the emanation of the patent, and when, from the assignments, it should have issued in the name of Thompson.
In such a case, therefore, the obligation o( Cobb would *513 kot arise until the date of the patent; and in the present case, although tlie patent purports to have issued in the name of John Cobb, yet as he is proven to have previously departed this life, it is plain that he can never have been under any obligation to convey the land, and, consequently, on account of his failure to convey, Thompson cannot have shewn any equity whatever.
ifbyafray. duteru or vo hintary act ""artswi'-Juhe title, he is an-swerabie to ^Jeslut
But if the s de-favor 0f 0‘nc shewing no e(tmfy> the serthisclaim w> the proper-^’t bg„bj*^ ⅛⅜ trustee.
But as Howell Cobb is one of the heirs of John Cobb, there is no doubt but that the title which would have pass* ed by the patent to the latter, as he was then dead, bv ope4 ration of law under the act of the legislature of this country, enured to, and became vested in, his heirs generally.
The title thus thrown upon the heirs, as we have already observed in relation to John Cobb, was most clearly held by them in trust for the use of any person Who might, under a contract with their ancestor, be entitled to the equitable interest'.
, And hence it is contended, that, as by the assignments, Thompson has shewn himself clothed with the equity, he ought, for so much as the heirs have been disabled, by the decree in favor of Taylor, from conveying, to be indemnified in the present contest.
Had the heirs, by a voluntary and fraudulent conveyance, defeated Thompson’s equity, they should, most indisputa-blv, be compelled to account for the injury; but as the ¡conveyance to Taylor appears to have been executed under a decree obtained without even the service of process upon them, there is certainly no ground for the imputation of fraud, and without evidence of fraud, as they seem to have become by operation of law, and without their assent, clothed with the legal title in trust for others, they ought not, in consequence of the conveyance to Taylor, obtained also without their concurrence, to be made account to Thompson.
The conveyance to Taylor, as he is not proven to have had an equity, must be considered as barely passing to him the title which the heirs of Cobb, bv operation of law, held in trust for others, and if entitled to.it, Thompson should pursue his remedy against Taylor.
The title to the other fourth, not conveyed to Taylor, it is true, still resides in the heirs of Cobb; but as they hold it merely in trust, the naked circumstance of their not having conveyed to Thompson, assuredly furnishes no de-fence against the equity of Howel^Cobb derived under a bona fide purchase of the judgment in Virginia.
Daviess and Bibb for appellant, Hoggin and Hardin for appellee.
lo^w u' n^t decree nve-rest, except ile-yeiT 11C r¡ t a pcnaUy.'or incuses where ^fl|j law £lves Su
Notwithstanding, however, Cobb may have shewn him-entitled to the judgment, we arc of opinion the court decided correctly in not decreeing Thompson to pay interest,
In some cases the chancellor should, no doubt, give inte-resU bntthc general rule in equity is, not to allow interest upon judgments, unless founded upon a debt with a penalty, or which, by operation of law, bears interest: 2 Fonblank, Uq. ^24, note d. and the judgment in question not being one of that character, and there being no circumstances proven to take the case out of the general rule, we apprehend interest was properly refused by the court below,
Upon the whole we are of opinion the decree must be affirmed with damages, but each party must pay their own-cost in this court

Absent, Judge Uowax.